ABBETT, D/B/A E. T. ABBETT & ASSOCIATES *v.* THOMPSON.

[No. 669A111. Filed November 20, 1970.]

*Hughes & Hughes,* of Indianapolis, for appellant.

*Harrison, Moberly, Wallace & Gaston,* of Indianapolis, for appellee.

HOFFMAN, P.J.—This appeal arises from a judgment entered by the trial court in favor of defendant-appellee in a suit brought by plaintiff-appellant to recover the unpaid balance on certain car wash equipment and services.

In March of 1967 appellee signed two orders for car washing equipment. Appellee ordered a 3-Bay Cadillac Package and a 1-Bay Vibrapulse Automatic on one order form and various other accessories on the second order form. The entire system was to comprise a do-it-yourself auto washing center.

The car wash came in pieces and had to be assembled. This was done and in July, 1967, the car wash went into operation. With the exception of the Vibrapulse Automatic washer, the car wash was still in operation in November, 1968, when the trial which led to this appeal was held. The automatic equipment had been replaced by a self-service 25-cent "wand" —like the other three Bays.

Appellant's complaint, as amended by interlineation at the close of his evidence, was in three legal paragraphs. Paragraph I is based upon a written contract—the signed order for the 3-Bay Cadillac Package and the 1-Bay Vibrapulse Automatic totaling $32,617.90. Appellant alleged that appellee had paid only $16,500, and prayed for a judgment in the sum of $16,117.90, representing the balance due on such contract.

Paragraph II of the amended complaint is also based upon a written contract—the second order form signed by appellee. Appellant alleged that he had delivered a "Combination Changer" and a "Constant Flo System 4 Bay" and after appellee refused, in response to appellant's demand, to pay the contract price, appellant had not delivered the remaining items on the written contract. Appellant's prayer was in the amount of $3,373, plus interest, which included the value of the merchandise delivered and his loss of profits on the remaining items listed in the contract.

Paragraph III of appellant's amended complaint was based upon an open account for goods sold and delivered and labor and services furnished which totaled $2,661.61, plus interest.

Thereafter, appellee filed answer and counter-complaint for breach of warranties alleging the Vibrapulse Automatic did not conform to the promises and warranties made by appellant. Appellee alleged that appellant had failed to reclaim the equipment as appellee had requested and prayed for damages in the amount of $18,950—the contract price of the Vibrapulse Automatic.

At the close of the trial both parties submitted briefs and the trial court, without a jury, entered judgment as follows:

> "WHEREFORE, IT IS THEREBY ORDERED, ADJUDGED AND DECREED that the Court finds in favor of the defendant on plaintiff's Amended Complaint herein, and the Court finds in favor of the plaintiff on defendant's Counter-Complaint herein, and the costs of this action are charged against the plaintiff."

Only plaintiff-appellant has appealed, therefore, the judgment with regard to defendant-appellee's counterclaim is not before this court.

Appellant's sole assignment of error is the overruling of his motion for a new trial. Aside from errors of law which appellant chose not to incorporate in his brief, appellant's motion for a new trial contained three grounds, which are as follows:

> "1. Error in the assessment of the amount of recovery, in this, that the amount is too small.
> "2. The decision of the Court is not sustained by sufficient evidence.
> "3. The decision of the Court is contrary to law."

Appellant is appealing from a negative judgment, therefore, specifications of error numbered one and two present no question for our determination. *Pokraka v. Lummus Co.,* 230 Ind. 523, 528-529, 104 N. E. 2d 669 (1952) ; *Hinds, Exec-*

*utor, Etc.* v. *McNair, et al.*, 235 Ind. 34, 41, 129 N. E. 2d 553 (1956).

It is not disputed that Paragraphs I and II of appellant's amended complaint are based upon enforceable contracts. Neither is it disputed that the Uniform Commercial Code[1] governs the transactions. Appellant contends, and we agree, that each of the three paragraphs in his amended complaint constitute a separate claim for relief.

When appellant contends that the decision is contrary to law, we may consider only the evidence most favorable to appellee, together with any reasonable inferences which may be drawn therefrom; and it is only when there is no conflict in the evidence and it can lead to only one conclusion that being contrary to the one reached by the trial court, will the decision be reversed. *A. S. C. Corporation* v. *First Nat. Bank, etc.*, 241 Ind. 19, 23, 167 N. E. 2d 460 (1960) ; *Pokraka* v. *Lummus Co., supra; Quinn* v. *Peru Transit Lines, et al.*, 141 Ind. App. 111, 112-113, 226 N. E. 2d 546 (1967).

Paragraph I of the amended complaint was to recover the balance due on a contract dated March 17, 1967. The contract was for "One 3 Bay Cadillac Package With New Roto-Thrust Pumps" and "One 1 Bay Vibrapulse Automatic (above includes Building)." Both parties agree that appellee accepted these goods under the applicable provision of the Uniform Commercial Code.[2] Appellee, however, argues that his acceptance was properly revoked in accordance with Acts 1963, ch. 317, § 2-608, p. 539, Ind. Stat. Anno., § 19-2-608, Burns' 1964 Repl., which, in pertinent part, reads as follows:

> "Revocation of acceptance in whole or in part.
> "(1) The buyer may revoke his acceptance of a lot or *commercial unit* whose non-conformity substantially impairs its value to him if he has accepted it

1. Acts 1963, ch. 317, § 1-101, *et seq.*, Ind. Stat. Anno. § 19-1-101, *et seq.*, Burns' 1964 Repl.

2. Acts 1963, ch. 317, § 2-606, p. 539, Ind. Stat. Anno., § 19-2-606, Burns' 1946 Repl.

(a)   on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured;

\* \* \*

"(2)   Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3)   A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." (Emphasis supplied.)

Appellant contends, without conceding that appellee fulfilled the other prerequisites to a valid revocation, that appellee did not attempt revocation of the "commercial unit." "Commercial unit" is defined in Acts 1963, ch. 317, § 2-105, p. 539, Ind. Stat. Anno., § 19-2-105(6), Burns' 1964 Repl., as follows:

"Definitions—Transferability—'Goods'—'Future' goods—'Lot'—'Commercial unit.'—

\* \* \*

"(6)   'Commercial unit' means such a unit of goods as *by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use.* A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole." (Emphasis supplied.)

On this point appellant makes alternative arguments. First, appellant argues that appellee's 4-Bay Car Wash is a "Commercial Unit", and, second, he argues that at the very least the Vibrapulse Automatic was a "Commercial Unit." Appellee directs his argument solely to appellant's first contention and, at page 9 of his brief, states:

"Defendant, therefore, submits that the trial Court could reasonably conclude that the Vibrapulse was a 'commercial

unit' and sufficiently independent of the manual car washes so that defendant could revoke his acceptance of the nonconforming Vibrapulse."

Thus, the parties agree that the Vibrapulse was a "commercial unit." Therefore, the question before this court is: What, by commercial usage is a single whole, *i.e.*, a Vibrapulse for the purpose of sale? Phrased in the negative, the question would be: Did appellee, while attempting to revoke his acceptance of the Vibrapulse, retain so much thereof so as to materially impair its character or value on the market or in use?

Viewed in a light most favorable to appellee the record before us reveals that appellee removed the intricate working parts of the Vibrapulse, was not using that part of the electrical system, was not using the water softeners or water heaters *to full capacity*, and the interior lining of the Vibrapulse Bay had been removed. However, the evidence is undisputed that there were still four Bays in operation. In other words, there was more than the "3 Bay Cadillac Package" in operation at the time of trial. However, that fact need not be determinative of the question here involved. What is decisive is that the portion removed and/or not being used by appellee did not constitute a Vibrapulse. The parts that appellee removed—which he contends made up the "commercial unit"—did not constitute a single whole for the purposes of sale. Such division of the Vibrapulse by appellee materially impaired its character or value on the market and in use. Without the parts which appellee did not remove and continued to use, including the building, what appellee attempted to set aside and revoke was not a single whole for purposes of sale and, therefore, not the "commercial unit." The attempted revocation by appellee was not of a "commercial unit" and, therefore, of necessity, without affect and invalid. The determination of what comprises a "commercial unit" will depend upon the particular facts and circumstances of each case. We think our decision on this

point is in line with the *Indiana Comment* to § 19-2-105 (6), *supra,* "[t]he definition of 'commercial unit' is more objective in that it is tied to 'usage.' "

With regard to Paragraph II of the amended complaint, the record, indeed, appellee's own testimony, reveals that at least two items, the "Constant Flo System 4 Bay" and "Combination Changer" were received and still being used or at least on appellee's premises. Appellee further testified that he had not paid for these items. As to these items there was no counter-complaint for breach of warranty, no attempted revocation and, therefore, the judgment of the court in favor of appellee is contrary to law.

Paragraph III of the amended complaint was based upon an open account. There was no counter-complaint for breach of warranty, no attempted revocation and, again, at least with regard to some of the items, appellee testified that he had received, used or was still using them, and had not paid for them. Such evidence leads to only one conclusion, that being contrary to the decision reached by the trial court. Therefore, the judgment of the trial court must be reversed. *A. S. C. Corporation* v. *First Nat. Bank, etc., supra; Quinn* v. *Peru Transit Lines, Inc., et al., supra.*

Appellee argues the theory apparently utilized by the trial court, *i.e.,* by the payment of $16,500 appellee had satisfied his obligations for those items which were indeed useful to him. This theory has no application to the instant case because 1) it is, in effect, accepting and using the allegations of breach of warranty asserted in the counter-complaint when the judgment decreed that there was no breach of warranty, 2) it is contrary to the pleadings and proof which set forth and support three claims for relief—not one, and 3) the result reached is contrary to the statutes of the State of Indiana, *i.e.,* the Uniform Commercial Code.

Clearly a buyer may revoke his acceptance when he has complied with all of the prerequisites enunciated in § 19-2-

608; *supra.* The first requirement of § 19-2-608, *supra,* is that the revocation be of a "lot or commercial unit." With this requirement appellee did not comply and he, therefore, cannot seek refuge in that section.

The trial court erred in its judgment in favor of appellee on each of the three paragraphs of appellant's amended complaint.

Judgment reversed and cause remanded with instructions to sustain appellant's motion for a new trial.

Lowdermilk, C.J. and Sharp, J., concur.

White, J., dissents without opinion.

Pfaff, J., not participating.

NOTE.—Reported in 263 N. E. 2d 733.