FRANK BARTON ET UX *v.* ARTHUR MIRICH,
D/B/A MIRICH CONSTRUCTION

[No. 670A100.   Filed September 16, 1971.]

*Steve H. Tokarski,* of Gary, for appellants.

*Adam Benjamin, Jr.,* of Gary, for appellee.

LOWDERMILK, J.—Plaintiff-appellants entered into a lawsuit against defendant-appellee to recover $7,323.64 paid to defendant-appellee by appellants under a construction contract, plus $10,000 damages.

The defendant-appellee filed three pleading Paragraphs of answer. In the first Paragraph of answer the appellee admitted that plaintiff-appellants had made payments of $7,-323.64 to him; the second Paragraph alleged an affirmative defense, charging the appellants breached the construction contract; the third Paragraph alleged the contract was rescinded and abandoned by the plaintiffs, to which were filed replies in denial. Defendant also filed his counterclaim demanding judgment against the plaintiffs.

The case came to trial before a jury and before the commencement of the trial the appellants amended their complaint by striking out allegations of fraud. THEN THE PARTIES STIPULATED AND AGREED THAT THE QUESTION OF WHETHER OR NOT THE CONTRACT WAS RESCINDED WILL NOT BE SUBMITTED TO THE JURY.

At the conclusion of the trial the jury returned its verdict, finding for the defendant-appellee and against the plaintiff-appellants. The court then entered judgment accordingly.

Plaintiff-appellants entered into a contract with defendant-appellee, a construction company, for the construction of a residence in Lake County. Much of the contract had already been written out on a typewriter and there were blank spaces left therein, which blank spaces were asterisked and filled in at the time the parties sat down to look at the contract. The last sheet of the contract was an addendum, which was written in longhand and the contract was agreed upon and executed by and between the parties. From the evidence in the

case it appears that all parties fully understood the contract, even though plaintiff-appellants did not write any of the terms of the contract and the handwritten portion was solely that of the defendant-appellee. The defendant-appellee testified that everything written into the contract was discussed and agreed upon before he wrote freehand in the contract, and also, that what he had put on the addendum sheet was discussed and agreed upon before he wrote it up.

On June 8, 1966, the date of the execution of the contract, plaintiff-appellants made a down payment of $100 and made further payments as they could, including the proceeds from the sale of their own house, the total payments being $7,323.64.

The appellee, in his answer to the statement of said payment stated: "That defendant admits the allegation contained in rhetorical paragraph six (6) of plaintiffs' complaint" (which was the allegation of the amount paid.)

The contract provided for the builder to erect, build and completely finish a residence according to plans and specifications, and in a good and substantial workmanlike manner. Plaintiff-appellants allege the failure of the defendant-appellee to comply with the above contract provisions and the disagreement as to the builder's charge for "extras" led the plaintiff-purchasers to cancel the contract.

The major alleged areas of alleged non-compliance with the contract were water seepage inside the house, sagging ceilings throughout the house, installation of the wrong color and type of trim within the house, and the installation of the wrong color paneling within the house. There were further allegations of deficiencies in almost every room of the house, which included water leakage. The defendant-appellee testified the water damage occurred because of lack of gutters, occasioned by the plaintiffs' failure to indicate what kind of gutters they wanted installed, and leakage around a plumber's flue, occasioned by the plaintiffs' failure to select the plumbing fixtures which were to be installed.

Plaintiff-appellants alleged that the ceiling was sagging in a six foot diameter and could be pushed up three inches in places because there was nothing holding it. This was in the living room, dining room and kitchen. However, defendant-appellee's employee, agent and architect testified that he did not recall the ceiling of the living room and dining room ever coming loose.

Plaintiff-appellants further testified that the contract provided for all natural trim to be white pine, but instead they received a variation of finish trim. Defendant-appellee testified that the contract called for natural white pine and this was used in some places but was not in other places because the plaintiff-appellants-purchasers had changed the specifications. The record shows disputed evidence as to several changes claimed by each of the respective parties to this litigation as to trim and other matters. Further evidence on the dispute was given by office manager James R. Helsel for defendant-appellee, who testified that he telephoned the plaintiff-appellant Mrs. Barton and informed her that there were two different tones of paneling and Mrs. Barton had said she wanted the lighter. This, however, Mrs. Barton later denied.

The appellants testified that on February 7 or 8 Mr. Barton was last in the house and took pictures for evidence. He had a key to the door, but three days later defendant-appellee changed the locks on the doors to keep the plaintiff-appellants out.

On February 15th plaintiff-appellants made a demand upon defendant-appellee for the return of the money they had previously paid. This demand was made by a letter, written by plaintiff-appellants' attorney. This situation was followed by the commencement of this lawsuit, about the middle of 1968.

Defendant-appellee testified that prior to the lawsuit he did not attempt to sell the house, but he did finish the house and sold it afterward.

The appellants' claim for relief was based on the rescission

of the contract for the appellee to construct the house for the appellants; that defendant-appellee had sold the house to another purchaser and retained the money paid to him by plaintiff-appellants and that the verdict is contrary to law for defendant-appellee's refusal to repay the appellants the sum of $7,323.64.

Appellants timely filed their motion for a new trial, which was by the court overruled.

The causes in appellants' motion for a new trial urged herein are:

3. The verdict of the jury is contrary to law.

5. Error of law occurring at the trial as follows:

A.) The court erred in refusing to give to the jury at the request of the plaintiffs each of the written instructions tendered and requested by the plaintiffs and numbered 1 and 2.

B.) The court erred in giving to the jury at the request of the defendant each of defendant's instructions numbered 3, 4, and 9 and to the giving of each of which instructions the plaintiffs duly objected.

Plaintiff-appellants also stated ". . . that all two causes for a new trial raise substantially the same question, therefore, they are grouped together and supported by one argument."

The plaintiff-appellants' written tendered instruction number 1, which was refused by the court, is as follows:

"You are instructed that the question of rescission of contract is not to be decided by you as a jury. The court has decided this question and it has decided that the contract has been rescinded by the conduct of the parties."

The plaintiff-appellants' tendered written instruction number 2, which was refused by the court, is as follows:

"When the contract was rescinded, the defendant could not retain money paid to him by the plaintiff, and having

failed to return said money, plaintiff is entitled to have it repaid with interest and damages."

The defendant-appellee tendered written instruction number 3, which was given by the court, as follows:

"The court instructs the jury that where one party to a contract gives notice to the other of determination not to perform, further performance by the party receiving the notice is unnecessary."

The plaintiff-appellants objected to the above instruction.

The defendant-appellee's tendered written instruction number 4, which was given by the court, is as follows:

"The court instructs the jury that actions and conduct of one party to a contract which prevents the other from performing his part, excuses performance by such other party; that one suing for breach of contract who by his own conduct prevented the performance by the other party cannot recover judgment."

Plaintiff-appellants objected to the above instruction.

The defendant-appellee's tendered written instruction number 9, which was given by the court, is as follows:

"The court instructs the jury that a party who seeks to rescind a contract because of the other's default must show that he has done all that he is required to do in order to entitle himself to a performance by the other party. Moreover, a party seeking to rescind must show that he was free from default in relation to the obligation which he claims the other party failed to perform."

It is elementary that the law is that a party who properly fails to raise his objection at the proper time in the trial court has waived his right to present the question in this court for the first time, and needs no citation of authority.

The appellants saved the record in charging the verdict of the jury was contrary to law. We have set out disputes in the

evidence of the parties that raised questions of fact that convinces this court that ordinary and reasonable men, after hearing the same, would not necessarily come to the same conclusion and, therefore, the same conclusion would not be contrary to law. It is only where the evidence is without conflict and leads to but one reasonable conclusion and the trial court or jury has reached a contrary conclusion that the decision will be disturbed as contrary to law, that is, where it affirmatively appears that reasonable men could not have arrived at the same verdict. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669.

And, it is only when there is no conflict in the evidence and it can lead to only one conclusion, that being contrary to the one reached by the trial court, will the decision be reversed. *Abbett* v. *Thompson* (1970), 148 Ind. App. 25, 263 N. E. 2d 733.

The parties having heretofore stipulated and agreed that the question as to whether or not the contract had been rescinded *will not be submitted to the jury* changed the theory on which they were proceeding and there was nothing for reasonable men to consider on which they might have disagreed on whether the contract was rescinded and, by reference, if so, by whom it was rescinded.

The case of *Sickels* v. *Aetna Securities Co.* (1942), 220 Ind. 347, 41 N. E. 2d 947, was a suit on rescission of a contract; however, in this case there was a question of fraud. There appears no question of fraud in the case at bar, but only the question of a disagreement between the parties.

In *Sickels*, at page 351, the court said:

"* * * Under our code it is necessary for a pleader to adopt and conform to some definite theory. If doubt exists as to what the theory is, the court will determine it from the general scope and tenor of the pleading. These rules are too well known to justify the citation of authorities. * * *"

It is inconceivable how the appellants' attorney could stipulate before trial that the question of whether or not the

contract was rescinded would not be submitted to the jury and yet expect to proceed on the theory that it had been rescinded and have the court to instruct on the same and the jury to pass upon that question.

Plaintiff-appellants then contend after such stipulation that the trial judge erroneously refused to give plaintiff-appellants' tendered instruction number 1, as heretofore set out, which stated, among other things "* * * The court has decided this question and it has decided that the contract has been rescinded by the conduct of the parties." There is no evidence in the record that the court made such a decision and the instruction is clearly erroneous and was properly refused.

The appellants further object to the court's failure to give their tendered written instruction number 2, heretofore set out, which reads in part, as follows: "When the contract was rescinded . . ." The court correctly refused this instruction for the reason that the parties had stipulated and agreed that the question of whether or not the contract in this cause was rescinded will not be submitted to the jury. The record discloses that plaintiffs' said tendered instruction number 2 had the word "When" stricken and inserted in its place instead the word "If" and was given as amended.

Although the parties had stipulated and agreed that the question of whether or not the contract in the cause was rescinded would not be submitted to the jury, the change in this instruction did, in our opinion, submit to the jury the question to decide if the contract was rescinded. There was evidence, as we have heretofore stated, and other evidence on which it could be determined if the contract was rescinded and under this instruction as amended the jury had the right to determine that question and it can only be assumed that they did consider it. There having been evidence which the jury could have considered, and it being the rule that this court cannot weigh the evidence, we shall not weigh the evidence as related to by this instruction.

Plaintiff-appellants further contend that they are entitled to have instructions based on the theory of their case if warranted by any evidence fairly tending to support it and not covered by other submitted instructions. With this we agree. It is their further contention that the subject matter was not adequately covered by the court in other instructions, and this is untenable.

Defendant-appellee's tendered instructions numbered 3, 4 and 9 have been heretofore set out verbatim. The record discloses that objections were made by plaintiff-appellants but it further discloses that no written or oral objections were submitted thereto to the court and made a part of the record in this cause.

This case was tried in the year 1969, with the motion for new trial being filed on the last day of the year and ruled upon in 1970 after the adoption of the new Rules of Procedure. Under the old Rules the applicable Rule of procedure concerning objections to instructions was 1.7(3), which provides:

"(3) All instructions given or refused, and all written objections submitted thereto, shall be filed in open court and become a part of the record in the cause without a bill of exceptions. Objections made orally shall be taken by the reporter and may be made a part of the record by a general or a special bill of exceptions."

Also, under the new Rules, Rule 51(C) provides, in part, as follows:

"* * * No party may claim as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection * * * and all written objections submitted thereto, shall be filed in open court and become a part of the record. Objections made orally shall be taken by the reporter and thereby shall become a part of the record."

It is certainly apparent that there has been no substantial change by the enactment of the new Rules in this respect.

Objections to instructions under either the old or new Rules may be made either written or orally. The only distinction between the same is that under the old Rule oral objections must have been reduced to writing and made a part of the record by a special bill of exceptions and under the new Rule it is only necessary that the objections be made orally and shall be taken by the reporter and thereby such objections shall become a part of the record. Regardless of which way it is done, a specific objection must be made. The purpose of this procedure is to advise the court of the legal basis of what is being done, as well as to give the adverse party an opportunity to correct the error at an early time and thus avoid time and expense of a new trial. However, as we have stated earlier, the record reveals no specific objections to the instructions as set out above and as early as *The Pittsburgh, Cincinnati and St. Louis R. W. Co.* v. *Conway* (1887), 57 Ind. 52, it was held that if the record does not disclose a specific objection or specific objections to instructions no question is preserved for appeal. See, also, *Mackey* v. *Niemeyer* (1942), 113 Ind. App. 10, 44 N. E. 2d 520.

The plaintiff-appellants having failed to comply with either the old Rules or the new Rules by filing written or oral objections to defendant-appellee's instructions 3, 4, and 9, have, therefore, waived their right to first raise the question in this court and no question was saved on said instructions.

Finding no reversible error, the judgment of the trial court is hereby affirmed.

Buchanan and Robertson, JJ., concur; Sullivan, P.J., concurs in result only.

NOTE.—Reported in 273 N. E. 2d 115.